Phyllis WEBB, Plaintiff,

v.

The AMERICAN RED CROSS and the Lancaster County, Nebraska Chapter of the American Red Cross, Defendants.

No. CV86–L–108.

United States District Court,
D. Nebraska.

Dec. 11, 1986.

Thomas L. Spinar, Crete, Neb., for plaintiff.

Louis Michael Thrasher, Lincoln, Neb. and Robert J. Smith, Washington, D.C., for defendants.

URBOM, District Judge.

The plaintiff is a citizen and resident of Lincoln, Nebraska. The defendant, American National Red Cross, is a national corporation chartered by the United States Congress with its principal office in Washington, D.C. The American National Red Cross is a non-profit organization which has chartered numerous local chapters. The defendant, the Lancaster County, Nebraska Chapter of the American Red Cross [Hereinafter referred to as the "Chapter"], is such a local chapter of the American Red Cross and is located in Lincoln, Nebraska.

The plaintiff alleges that the defendants discriminated against her on the basis of sex by rejecting her application for Deputy Director of Disaster Services and Service to Military Families and Veterans. The plaintiff claims that such actions violate Tile VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; Neb.Rev.Stat. § 48–1101 et seq.; Chapter 11.08 of the Lincoln Municipal Code; and the constitutional guarantees of equal protection and due process.

Both defendants have filed motions for summary judgment and attached affidavits and other competent evidence in support of their respective motions. The plaintiff opposes each motion and has filed affidavits and other competent evidence in response. Part One of this memorandum addresses the motion for summary judgment filed by the American National Red Cross and Part Two addresses the motion for summary judgment filed by the Chapter.

I. Summary Judgment Standard

In ruling on a motion for summary judgment "the facts and inferences which may be derived therefrom must be viewed in a light most favorable to the nonmoving party, and the burden is on the movant to establish that no genuine issue of material fact remains and that the case may be decided as a matter of law." *Fields v. Gander*, 734 F.2d 1313, 1314 (8th Cir.1984). The United States Supreme Court determined that summary judgment is authorized "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Sartor v. Arkansas National Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944).

Pursuant to Rule 56(e), the nonmoving party must set forth specific facts showing that there is a genuine issue as to any material fact where a motion for summary judgment is supported by affidavit. The United States Supreme Court determined in

*Celotex Corp. v. Catrett,* —— U.S. ——, ——, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), that the nonmoving party must go beyond the pleadings and establish the existence of controverted issues by affidavits, depositions, answers to interrogatories, or admissions on file.

## II. Undisputed Facts

The parties agree that at all relevant times the members of the Board of Governors and the officers of the American National Red Cross did not serve as members of the Board of Directors or as officers of the Chapter. The Chapter has a separate Board of Directors and separate officers. The Chapter determines its operating budget and meets its budget requirements through local fund-raising efforts. Applicants for the position of Deputy Director of Disaster Services and Service to Military Families and Veterans are recruited, interviewed, and selected by the Selection Committee. The Selection Committee is comprised of various members of the Chapter Board of Directors, a paid Chapter employee, and several unpaid Chapter volunteers. The Selection Committee offered the position of Deputy Director of Disaster Services and Service to Military Families and Veterans to someone other than the plaintiff. Consequently, the plaintiff filed discrimination charges with the City of Lincoln Commission on Human Rights and the Equal Employment Opportunity Commission. Each charge identified only the Lancaster County, Nebraska Chapter of the American Red Cross as the plaintiff's employer. Filing # 30.

## III. Analysis

### Part One

The plaintiff did not file a charge of sexual discrimination against the American National Red Cross with the Equal Employment Opportunity Commission prior to instituting this suit. 42 U.S.C. § 2000e–5(f)(1) provides in relevant part, that "a civil action may be brought against the respondent named in the charge ... by the [aggrieved] person." The plaintiff essentially claims that such action was not necessary as "substantial identity" exists be-

tween the Chapter and the American National Red Cross. Thus, the plaintiff argues that the defendants are a "single employer" for jurisdictional purposes of Title VII. The issue is whether, indeed, the American National Red Cross is a "joint employer" or a separate entity. The plaintiff does not argue that the Chapter is an agent of the American National Red Cross.

The parties do not disagree that the relevant standard for determining whether the American National Red Cross and the Chapter are sufficiently integrated to warrant unitary treatment is set forth in *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389, 392 (8th Cir.1977). According to the *Stuart* opinion, there are four factors to be considered: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control of the two entities. No one factor is controlling.

The decision rendered in *Massey v. Emergency Assistance, Inc.,* 580 F.Supp. 937 (W.D.Mo.1983), *aff'd* 724 F.2d 690 (8th Cir.1984), *cert. denied,* 469 U.S. 930, 105 S.Ct. 323, 83 L.Ed.2d 260, is most instructive as to the proper resolution of this case. First, in assessing the interrelation of operations the key is "the degree to which the [American National Red Cross] or its employees were in fact involved in the actual functioning of [the Chapter]." *Id.* at 942. The plaintiff asserts that the operations are interrelated because the Chapter is required to send reports to the American National Red Cross regarding finances, fund raising, productivity, statistics, and audits; adhere to American National Red Cross guidelines; and train its employees through instructors certified by the American National Red Cross and provide its employees with examinations prepared by the American National Red Cross. Additionally, the plaintiff argues that the Chapter would not exist but for a charter from the American National Red Cross and that the property and building which house the Chapter are owned by the American National Red Cross. I do not find that such

considerations weigh in favor of finding an interrelation of operations.

Unlike the circumstances in *Baker v. Stuart Broadcasting Co.*, supra, at 392, there is no evidence that the guidelines provided by the American National Red Cross to the Chapter are "very regimented rules [which set out] the parameters in which [the Chapter] can operate." The deposition testimony of James Iosbaker indicates that the American National Red Cross guidelines are followed, but that the programs are developed and implemented by the Chapter. There are some discretionary programs and some programs which are mandated by the American National Red Cross. The mandate imposed by the American National Red Cross directs each chapter to provide emergency and disaster relief and service to military families to the best of each chapter's ability.

The Chapter acts autonomously in the promulgation and operation of personnel policies. The Chapter and the American National Red Cross have separate personnel policies applicable to their respective employees. The requirement that the Chapter send reports of activities and finances to the American National Red Cross and that Chapter employees be trained by American National Red Cross instructors is not sufficient to establish any real interrelationship between the operations of the American National Red Cross and the Chapter. See *Massey v. Emergency Assistance, Inc.*, supra, at 939–940. Additionally, the Ninth Circuit Court of Appeals was not persuaded that the act of chartering another entity establishes both as a single employer. *Childs v. Local 18, International Brotherhood of Electrical Workers*, 719 F.2d 1379, 1382 (1983). Lastly, ownership of the building and property by the American National Red Cross does not show that the American National Red Cross was involved in the "actual functioning" of the Chapter.

In assessing the interrelation of operations, I find it significant that the by-laws of the Chapter are distinct from those of the American National Red Cross. The by-laws set forth the purposes of the Chapter, establish membership criteria, provide for the annual and special meetings of the membership, and determine the requirements for voting and for termination of membership. The by-laws may be amended without the approval of the American National Red Cross. The financial affairs of the two entities are distinct. The Chapter has a separate Nebraska resale or exempt sales certificate and is a separate withholding agent for social security payments and federal, state, and local taxes. The Chapter accounts are annually audited and the report is sent to the Chapter Board of Directors. The Chapter maintains its own workers compensation insurance, unemployment compensation insurance, health insurance for its employees, and affirmative action plan. Also, the entities do not share office space, equipment, or employees.

Personnel policy and procedure is adopted and approved by the Chapter Board of Directors. The function of the Board is to provide leadership and to determine the policy for implementation of services and programs. The Chapter has fashioned its own policy regarding compensation, promotion, demotion, performance, termination pay, and hiring procedures. Additionally, the Chapter determines its holiday pay, annual leave, vacation procedures, and sick leave policy. The Chapter is solely responsible for processing and defending a claim of employment discrimination. Based on all the foregoing considerations, I find that the operations of the two entities are distinct.

■ Second, in reviewing the common management factor, the existence of interlocking officers and directors is particularly relevant. In this case, there is no dispute that the Chapter and the American National Red Cross have separate boards of directors and separate officers. The plaintiff argues that the selection of the individual for Chapter Manager is approved by the American National Red Cross President and Board of Directors; thus, that the activities of the Chapter are managed by

the American National Red Cross. Such a mere formality is not sufficient to show that the American National Red Cross exerts control over the Chapter Manager or the Chapter board members and officers. See *Massey v. Emergency Assistance, Inc.,* supra, at 940. The plaintiff advanced no evidence to indicate that such approval resulted in control of Chapter management. Moreover, the Chapter Manager, James Iosbaker, stated in his deposition testimony that he submitted his application for employment to the Chapter and that the Chapter Selection Committee interviewed him. Iosbaker was offered the position by the Chairman of the Lancaster County Chapter. Moreover, Iosbaker reports to and is evaluated by the Chapter Board of Directors and does not consider himself an employee of the American National Red Cross.

Third, an important factor in the four-part standard adopted in *Stuart,* is the degree to which the control of labor relations is centralized. The requisite "control" is not potential control, but rather actual and active control of the day-to-day labor practices. *Fike v. Gold Kist, Inc.,* 514 F.Supp. 722 (N.D.Ala.1981). There has been no showing that the American National Red Cross either controls or has the authority to control the hiring, firing, wages, hours, working conditions, or fringe benefits of the Chapter employees. See *Russom v. Sears, Roebuck & Co.,* 558 F.2d 439, 443 (8th Cir.1977), *cert. denied* 434 U.S. 955, 98 S.Ct. 481, 54 L.Ed.2d 313 (1977). The uncontroverted evidence advanced by the defendant establishes that Chapter the acts independently in its hiring, firing, and training of employees. The Chapter also acts autonomously in the promulgation and operation of its personnel policies. Filing # 12, Deposition of Gilbert Tillis, at 3.

The plaintiff argues that there is a high degree of interrelationship between the Chapter and the American National Red Cross in the area of employment practices because information concerning job vacancies at the local and national level are compiled and published by the American National Red Cross, two Chapter employees were terminated in a reorganization instituted by the American National Red Cross, Chapter members may be *requested* by the American National Red Cross to serve elsewhere, the Chapter personnel policies meet the American National Red Cross regulations, and time served in either the Chapter or in the American National Red Cross is included in calculating vacation and retirement time.

A finding that job vacancies are published by the American National Red Cross and that the Chapter follows the American National Red Cross guidelines in its personnel policy is not sufficient to establish the American National Red Cross as a single employer. See *Massey v. Emergency Assistance, Inc.,* supra, at 940–941. Moreover, none of the plaintiff's assertions indicate that the American National Red Cross exercises actual and active control of the day-to-day labor relations of the Chapter and the clear weight of the evidence shows that the Chapter operates independent of the American National Red Cross in labor related matters. See *id.* at 942.

Fourth, in reviewing the factor of common ownership or financial control, I find that this element does not create a "joint employer" relationship. It is not disputed that the Chapter meets its budget needs by instituting local fundraisers. The majority of the Chapter's funds are provided by the local United Way and the balance is obtained through local donations. The Chapter employees are paid from the locally generated funds.

The plaintiff contends that the Chapter annually sends a specified dollar amount to the American National Red Cross and that Chapters raise money for each other when there are insufficient resources within a Chapter to provide adequate disaster assistance. Such assertions do not suggest that the American National Red Cross is empowered to unilaterally alter or eliminate the Chapter's funding. See *id.* at 943. Rather, such assertions demonstrate that the Chapter is financially secure indepen-

dent of the American National Red Cross. There is no indication that the American National Red Cross actually controls the Chapter's purse strings.

■ In the overall analysis, I find that the American National Red Cross and the Chapter are two distinct entities for purposes of the "single employer" standard articulated in *Stuart*. Consequently, this court lacks subject matter jurisdiction over the plaintiff's Title VII claim against the American National Red Cross since the American National Red Cross is not the plaintiff's employer. The constitutional claims posited against the American National Red Cross must be dismissed because the plaintiff failed to establish the requisite "state action" necessary to sustain allegations of violations of equal protection and due process. Since the plaintiff's federal claims are dismissed, this court declines to exercise jurisdiction over the pendant state and municipal claims against the American National Red Cross.

### Part Two

The defendant, Lancaster County Chapter, argues in its motion for summary judgment that the plaintiff's action against it is time barred. The plaintiff has 90 days to file a civil suit after notice of a "right to sue" has been given by the Equal Employment Opportunity Commission. The Chapter essentially contends that the 90–day limitation period begins to run on the date the "right to sue" notice was first delivered to the most recent address provided by the plaintiff to the Equal Employment Opportunity Commission. The plaintiff claims that the 90–day period begins to run from the date the plaintiff signed the return receipt acknowledgment accompanying the right to sue notice sent by registered mail.

The plaintiff does not take issue with the following factual development presented by the defendant: The EEOC mailed the plaintiff a right-to-sue notice by registered mail on August 8, 1985. The notice was delivered to the plaintiff by a postal carrier on August 12, 1985, and an official record of the delivery was left in the plaintiff's

mailbox. A second notice of the letter's presence was delivered to the address of the plaintiff on August 20, 1985, and the Postal Service retained the letter for the plaintiff until August 27, 1985. The plaintiff changed residences on October 27, 1985. The plaintiff's attorney, Tom Spinar, informed the EEOC of the plaintiff's change of address on about November 4, 1985. A copy of the right-to-sue letter was remailed to the plaintiff on November 5, 1985. This notice was signed by the plaintiff on November 21, 1985. The plaintiff filed this suit on February 5, 1986.

The defendant asserts that it is section 2000e–5(f), as amended by the Equal Employment Opportunity Act of 1972, which controls the resolution of this issue. 42 U.S.C. § 2000e–5(f)(1) provides in relevant part that:

> "If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action under this section ... or the Commission has not entered into a conciliation agreement ... the Commission ... *shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought* against the respondent named in the charge ... by the person claiming to be aggrieved...." (emphasis added)

The Eighth Circuit Court of Appeals determined in *Craig v. Department of Health, Education & Welfare,* 581 F.2d 189, 193 (1978), that sufficient notice is given where:

> "A registered or certified letter, or other written notice requiring the recipient to acknowledge receipt therefore, is sent to the employee and the employee personally acknowledges such receipt...."

Unlike the circumstances of this case, the court in *Craig* reviewed the provisions of Title VII, 42 U.S.C. § 2000e–16(c), as applied to federal employees. However, in *Thomas v. KATV Channel 7,* 692 F.2d 548, 550 (1982), *cert. denied* 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 790 (1983), the

Eighth Circuit noted that the holding in *Craig* was equally applicable to Title VII suits brought by private employees under 42 U.S.C. § 2000e–5(f)(1).

■ Based on the foregoing considerations, I find, as a matter of law, that the 90–day period did not begin to run until the plaintiff acknowledged receipt of the right to sue notice sent by registered mail. The acknowledgment was signed November 21, 1985. Consequently, this suit was timely filed.

■ The constitutional violations of due process and equal protection posed against the Chapter are dismissed because such claims are as deficient when brought against the Chapter as when brought against the American National Red Cross. The pendant state and municipal law claims posited against the Chapter are dismissed. Lincoln Municipal Code § 11.08 does not provide the plaintiff with a private cause of action. Under Neb.Rev.Stat. § 48–1120 (Reissue of 1984), a proceeding may be instituted in the district court within any county wherein the alleged unlawful employment practice was committed provided the Nebraska Equal Opportunity Commission procedures have been followed. The jurisdiction of the state court is "exclusive and its judgment and order shall be final, subject to appellate review provided by law." § 48–1120(4). The plaintiff has advanced no evidence to show that the procedures required in Neb.Rev.Stat. §§ 48–1118–1120 were followed. This court has neither the jurisdiction or the evidence necessary to review a claim brought under Neb.Rev.Stat. § 48–1101 et seq.

THEREFORE IT IS ORDERED that:

1. The motion for summary judgment filed by the American National Red Cross, filing # 12, is granted.

2. The motion for summary judgment filed by the Lancaster County, Nebraska Chapter of the American Red Cross, filing # 7, is granted in part and denied in part. The plaintiff's claims against the Chapter for violations of the constitutional guarantees of equal protection and due process, and for violations of Neb.Rev.Stat. § 48–1101 et seq. and of Lincoln Municipal Code § 1108 are dismissed. The plaintiff's Title VII claim against the Chapter remains to be resolved at trial.