Patricia OWENS, Plaintiff,

v.

**AMERICAN NATIONAL RED CROSS;
Connecticut Regional Blood Services;
American Red Cross Greater Hartford
Chapter and Blood Center, Defendants.**

**Civ. No. H–84–1254 (JAC).**

United States District Court,
D. Connecticut.

June 22, 1987.

Robert M. Bourke, Hartford, Conn., for plaintiff.

Barry J. Waters, Murtha, Cullina, Richter and Pinney, Hartford, Conn., for defendant American Red Cross Greater Hartford Chapter and Blood Center.

Joan Elise Dubinsky, American Red Cross, Washington, D.C., for defendant American Nat. Red Cross.

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### JOSÉ A. CABRANES, District Judge:

#### Background

This is a diversity action alleging wrongful discharge from employment and breach of contract. The separate motions for summary judgment filed by the two defendants present questions as to whether defendant American National Red Cross ("National") should be considered plaintiff's employer; whether the practices and written policies of defendant American Red Cross Greater Hartford Chapter and Blood Center[1] ("Greater Hartford") as embodied in its employee handbook and other documents created an enforceable contract that was breached when plaintiff was discharged; and whether its discharge of plaintiff was violative of public policy. The plaintiff was employed at Greater Hartford between October 1975 and December 1982. Her work during this period was apparently satisfactory. However, on Friday, November 19, 1982, under confused circumstances, plaintiff took half a personal day to attend the unemployment hearing of a former employee of Greater Hartford. At that hearing she was apparently forced into the position of declaring herself as a representative of either her employer or of the former employee. She elected to identify herself as a representative of the employer. Soon afterward, she was terminated. The stated grounds for her termination were that she was:

> untrustworthy, divisive within the department and undermining of management, also on November 23rd employee misrepresented the Red Cross at an unemployment appeals hearing. The relationship between the employee and the employer has deteriorated into irreconciliable differences.

Termination Document (dated Dec. 7, 1982) *attached to* Plaintiff's Memorandum in Opposition to Defendant Greater Hartford Chapter's Motion for Summary Judgment (filed June 17, 1986) ("Plaintiff's Memorandum in Opposition to Greater Hartford"). However, in dismissing Greater Hartford's appeal from a grant of unemployment compensation to plaintiff, the Appeals Referee of the Employment Security Appeals Division of the State of Connecticut concluded that plaintiff was terminated for attending the unemployment compensation hearing, not for repeated wilful misconduct, and that her actions in attending the hearing did not constitute wilful misconduct under the circumstances. *See* Decision of the Appeals Referee (dated Feb. 10, 1983) *at-*

---

1. Although named as a defendant, Connecticut Regional Blood Services is simply an administrative component of defendant Greater Hartford Chapter and Blood Center. *See* Affidavit of Vincent J. Celeste in Support of The Greater Hartford Chapter's Motion for Summary Judgment (filed May 28, 1986) at 2. Plaintiff has not contested this fact. Accordingly, there are no further references to Connecticut Regional Blood Services in this opinion.

*tached to* Plaintiff's Memorandum in Opposition to Greater Hartford.

## I.

### *National's Motion for Summary Judgment*

National pleads as an affirmative defense that it was not plaintiff's employer and has moved for summary judgment on this ground.

In order to grant a motion for summary judgment, the court must find that there is no "genuine issue of material fact" and that "the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. In determining whether there is a material issue of fact, the court must "resolve all ambiguities and draw all inferences against the moving party." *Schwabenbauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1981). However, the party opposing summary judgment " 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial," but instead "must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful." *Quinn v. Syracuse Model Neighborhood Corporation,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corporation,* 585 F.2d 31, 33 (2d Cir.1978)). Where the motion is properly supported, "the non-moving party may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### A. *The Facts*

The following facts regarding the relationship of National and Greater Hartford are undisputed, based upon the parties' written submissions or acknowledgements at the oral argument held on July 2, 1986. No members of National's Board of Governors serve on Greater Hartford's Board of Directors. No officer of National is an officer of Greater Hartford. National and Greater Hartford have separate budgets. Greater Hartford receives no funds from National. Greater Hartford has its own set of bylaws. Greater Hartford acts autonomously with regard to hiring, firing and compensation of employees. The personnel handbooks upon which plaintiff predicates her claims were issued and prepared entirely by Greater Hartford.

It is also undisputed that the advertisement plaintiff responded to when she applied for her employment referred to "The American Red Cross," not Greater Hartford. Furthermore, the words "American National Red Cross" or "American Red Cross," appear prominently on all public documents distributed by Greater Hartford. Greater Hartford has voluntarily enrolled its employees in the American National Red Cross Retirement system; however, Greater Hartford was not required to enroll its employees in this system. Greater Hartford also makes all contributions on behalf of these employees, without any funding or financial assistance from National.

### B. *The Legal Standard*

Inasmuch as the parties agree as to all the facts concerning the relationship between National and Greater Hartford, the sole question presented is the legal conclusion to be drawn from these facts, which in turn depends upon the legal standard to be applied. In support of its position that it was not plaintiff's employer, National relies upon criteria originally developed by the National Labor Relations Board ("NLRB") and endorsed by the Supreme Court in *Radio and Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965) (per curiam) ("*Radio and Television Broadcast Technicians*"), to determine whether two or more apparent entities are actually a single entity in its relationship to employees. Under the "four-factor test" developed by the NLRB to answer this question in cases arising under the National Labor Relations Act ("NLRA") a court considers:

1. functional interrelation of operations;
2. centralized control of labor relations;

3. common management; and

4. common ownership or financial control.

*See Radio and Television Broadcast Technicians, supra,* 380 U.S. at 256, 85 S.Ct. at 877.

National contends that the NLRB's four-factor test for determining whether two or more entities are a single employer "is equally applicable in a variety of other contexts," Memorandum of Points and Authorities in Support of Defendant American National Red Cross' Motion for Summary Judgment (filed May 27, 1986) ("Defendant's Memorandum") at 7, and points to several cases in which the courts have applied these criteria to non-LMRA cases. *See, e.g., Guthrie v. Ciba–Geigy, Ltd., supra,* 620 F.Supp. 91, 93 (D.Conn.1984) (four-factor test in action under the Age Discrimination in Employment Act); *Baker v. Stuart Broadcasting Company,* 560 F.2d 389, 392 (8th Cir.1977) (four-factor test in action under Title VII); *Massey v. Emergency Assistance Inc.,* 580 F.Supp. 937, 939 (W.D.Mo.1983) (same); *see also Clinton's Ditch Co-op Co., Inc. v. NLRB,* 778 F.2d 132, 137 (2d Cir.1985) (noting that the Supreme Court has endorsed this test for determining the existence of a "single employer," but refusing to select a particular test for determining "joint employer" status in actions under the NLRA). Among these cases is a recent Title VII case involving National and a former employee of the Nebraska chapter of the American Red Cross. In that case, the district judge applied the four-factor test to facts virtually identical to those presented here. After reviewing each of the four factors, the district judge concluded that National was *not* plaintiff's employer and therefore should be dismissed as a defendant. *Webb v. The American Red Cross and the Lancaster County, Nebraska Chapter of the American Red Cross,* 652 F.Supp. 917 (D.Neb.1986) ("*Webb*").

Plaintiff responds that this is the wrong test because the present case involves one legal entity, not two, and that standards developed in the context of collective bargaining are inappropriate in the circumstances presented here. Plaintiff's Memorandum in Opposition to Defendant American National Red Cross' Motion for Summary Judgment (filed June 17, 1986) at 3–4. According to plaintiff, National and Greater Hartford constitute a "single legal entity" because they were created by an act of Congress "which specifically indentifies [sic] the local chapters as merely local units of the main entity." *Id.* at 4. In opposition to the four-factor test espoused by National, plaintiff appears to offer, implicitly at least, some common law theories of employer liability and of piercing the corporate veil.

In the present case, however, plaintiff's claims arise under the common law of Connecticut, not under the NLRA or any other federal statute under which courts have implicitly or explicitly applied the NLRB's four-factor test. Accordingly, the court must determine in the first instance what standard the Connecticut Supreme Court would apply to the question of determining whether defendant National was plaintiff's employer by virtue of its relationship with Greater Hartford. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Cunninghame v. Equitable Life Assurance Society of the United States,* 652 F.2d 306, 308 (2d Cir. 1981) ("Where there is an absence of state authority on the issue presented to a federal court sitting in diversity, ... the federal court must make an estimate of what the state's highest court would rule to be its law."); *McKeown Distributors Inc. v. Gyp–Crete Corp.,* 618 F.Supp. 632, 643 n. 6 (D.Conn.1985) (the same as "a well-established proposition"). *Cf. L. Cohen & Co., Inc. v. Dun & Bradstreet, Inc.,* 629 F.Supp. 1419, 1425 (D.Conn.1986) (federal court should use " 'judgment, restraint and discretion' to certify only those unusual questions that are particularly suitable for resolution by the Connecticut Supreme Court[,]" and should not certify the "vast majority of cases ... that raise unsettled issues of state law.").

Upon inquiry from the court, both parties submitted briefs on the question of Connecticut law, and while no case directly on point was found, there is substantial

agreement upon the potentially applicable standards under Connecticut law. Both parties agree that Connecticut courts look to federal precedent in cases involving state labor and employment discrimination statutes. Plaintiff's Supplemental Brief (filed Mar. 31, 1987) ("Plaintiff's Supplemental Brief") at 3; Defendant American National Red Cross Supplemental Memorandum in Support of Motion for Summary Judgment ("Defendant's Supplemental Memorandum") (filed Mar. 30, 1987) at 2–3. Both parties also agree that if the case is characterized as one involving an attempt to "pierce the corporate veil" under Connecticut corporate law, Connecticut courts would employ the "instrumentality" and "identity" rules announced in *Zaist v. Olson*, 154 Conn. 563, 227 A.2d 552 (1967). Plaintiff's Supplemental Brief at 4; Defendant's Supplemental Memorandum at 3–5. Finally, while plaintiff has not explicitly addressed the issue, National has put forward its position on the appropriate standard for determining whether an individual is an employee under Connecticut common law of master and servant. Defendant's Supplemental Memorandum at 5–6. *See* Part I(F)(ii), *infra*.

■ Although there is no case directly on point in Connecticut or elsewhere in our Circuit, it appears likely that in the circumstances presented by this case, the Connecticut Supreme Court would answer the question of whether two entities are actually a single employer by employing the NLRB's four-factor test. In reaching this conclusion, the court rejects plaintiff's argument that the question of whether National is plaintiff's employer may be answered primarily by reference to the statutory origins of the American Red Cross. In creating the American Red Cross, Congress explicitly left to National's board of directors the promulgation of "regulations with respect to the ... relationship of the chapters to the corporation," 36 U.S.C. § 4a, and plaintiff has cited neither case law nor legislative history to support its argument that the creation of National by an Act of Congress is determinative of National's legal relationship to local chapter employees. No one disputes that Greater Hartford is a local unit of National, but this fact means little or nothing without a detailed inquiry into the functional relationship between the two admittedly related entities.

Furthermore, although the organizational structure of the nationwide system we generally call the "American Red Cross" is in some respects unique, its structure appears analogous to that of other corporate entities to which courts have applied the NLRB's four-factor test. *See, e.g., Childs v. Local 18, International Brotherhood of Electrical Workers*, 719 F.2d 1379 (9th Cir. 1983) (applying four-factor test in Title VII case to find that International Union and local are not a single employer); *Webb, supra* 652 F.Supp. 917 (same). Also significant in the circumstances presented here is the fact that the basic conflict involves a dispute over a *personnel* matter—the firing of an employee. The issue at this point between National and plaintiff is simply whether National may be characterized as plaintiff's employer. The resolution of this question does not appear to depend upon any arguably unique characteristic of the American Red Cross which might be relevant in another context. It seems appropriate, therefore, to apply a legal standard created and employed to resolve the same question in a closely analogous context.

### C. *Applying the Four–Factor Test*

#### i. *Functional Interrelation of Operations*

A consideration of the first of the factors, the interrelation of operations of the two entities, shows no interrelation between the day-to-day operations of National and those of Greater Hartford: the governing boards and the officers of the two organizations are completely separate and distinct; Greater Hartford has its own separate and distinct bylaws; each organization is a separate withholding agent for social security payments and for federal, state, and local taxes; each has a separate federal tax identification number; Greater

Hartford has its own operating budget; and Greater Hartford receives no funds from National.

### ii. *Centralized Control of Labor Relations*

Although no one factor is determinative, the second factor—centralized control of labor relations—is clearly of special importance. In this case, the evidence is undisputed that Greater Hartford has exclusive control over labor relations. Greater Hartford negotiates collective bargaining agreements with its unionized employees without any participation of, or review by, National. Greater Hartford operates independently in hiring, firing, and training employees, and in developing and implementing personnel policies and procedures, labor relations policies, and grievance procedures. The board of directors of Greater Hartford establishes personnel policies for non-unionized workers, without any review by National. Greater Hartford also prepares and distributes the employee manuals which define the terms and conditions of employment for these workers and which are alleged to form the basis of the contract between plaintiff and defendants in this case.

Arguably counterbalancing these overwhelming indications of Greater Hartford's independence in the area of labor relations is the undisputed fact that Greater Hartford has enrolled its employees in National's retirement program. *See* Affidavit of Ronald M. Verde (filed June 5, 1986) at 6–7, ¶ 17. However, it is also not disputed that Greater Hartford's decision to enroll the employees was completely voluntary and discretionary and that Greater Hartford makes all the contributions to the system, without any funds or financial assistance from National. *Id.* Such an arrangement does not in any way undermine the conclusion that Greater Hartford is independent from National in its day to day labor relations with its employees.

### iii. *Common Management*

The third factor is common management. There is no overlap whatsoever between Greater Hartford's board of directors and National's board of governors. The same is true for the two sets of officers. Nevertheless, National and Greater Hartford appear to hold themselves out to the public as one entity, and it would not be unreasonable for a member of the public to *assume* they were one entity; an employee of Greater Hartford might also reasonably think of herself as working for "the Red Cross," or, indeed, "the American Red Cross." Regardless of whether such an assumption is warranted in some contexts, the presentation of such a united front to third parties by National and Greater Hartford does not mean that there actually exists a common management. Viewed functionally, as it ought to be, this factor also favors National.

### iv. *Common Ownership or Financial Control*

We turn, finally, to the fourth factor: common ownership or financial control. Greater Hartford has absolute authority over its financial matters, including the formulation of its own budget and the raising of funds to meet that budget. It pays its employees with its own funds drawn in its own name. Accordingly, this fourth factor also favors National.

### D. *Conclusion under the Four–Factor Test*

Under the four-part test designed to determine the actual operations of the two organizations, all but one factor overwhelmingly favor National's position that it cannot be considered plaintiff's employer for the purpose of imposing liability; even the one factor about which there may be some doubt (because of the public relations strategy of National and Greater Hartford) is clearly in National's favor when viewed from a functional perspective. Accordingly, the court finds that under the four-factor test originated by the NLRB, National cannot be considered plaintiff's employer.

### E. *Other Legal Standards*

Plaintiff fares no better under the other potentially applicable legal standards.

Plaintiff does not claim that National should be held liable on a theory of agency, but rather, appears to rely on Connecticut's law of corporations and the common law of master and servant.

### i. *Connecticut Law of Corporations*

■ Under Connecticut's law of corporations (concerning entities that provide the closest analogy to the structure and interrelationship of the American Red Cross and its local chapters), in order to hold National liable for plaintiff's dismissal, plaintiff would have to show that the application of the "instrumentality rule" or the "identity rule" requires a piercing of the corporate veil of the two entities. *Zaist v. Olson*, 154 Conn. 563, 227 A.2d 552 (1967) ("*Zaist*"); *McPheron v. Penn Central Transportation Co.*, 390 F.Supp. 943 (D.Conn.1975).

> The "instrumentality rule" requires,
>
> in any case by an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Zaist*, 154 Conn. at 575, 227 A.2d at 558 (citations omitted). As this explanation makes clear, the instrumentality rule focusses narrowly upon the transaction giving rise to the plaintiff's claim. In the present case, only Greater Hartford was involved in the transaction complained of; National had no involvement whatsoever in any phase of plaintiff's employment or in her termination. Accordingly, the instru-

mentality rule provides no basis for holding National liable in the present case.

■ Under the "identity rule,"

[i]f plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic identity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.

*Zaist, supra,* 154 Conn. at 576, 227 A.2d at 558 (quoting *Mull v. Colt Co.*, 31 F.R.D. 154, 163 (S.D.N.Y.1962)). Plaintiff apparently bases her argument on the identity rule, because there is no doubt that Greater Hartford's interest in its charitable activities is identical to that of National. However, the identity rule, like the instrumentality rule (and the NLRB four-factor test), is clearly based on the actual functioning of the two entities. In the paradigmatic case under the identity rule, as described by the Connecticut Supreme Court, unity of ownership, management, and purpose were coupled with financial arrangements that threatened to allow one entity unconscionably to shift assets it had generated through its activities out of the reach of third parties it had wronged by those activities. *Id.* Here there is no allegation, nor could there be, that as a result of the organizational and financial arrangements between National and Greater Hartford plaintiff would be left without a remedy unless National could be held liable for any wrong that may have been committed by Greater Hartford.

In sum, a functional analysis under Connecticut's instrumentality and identity rules closely resembles the analysis required under the NLRB's four-factor test. It is therefore not surprising that under the Connecticut rules National cannot be considered plaintiff's employer for the purpose of imposing liability on National in this case.

**ii. *Connecticut Common Law of Master and Servant***

The Connecticut common law of master and servant is no more favorable to plaintiff than the other principles considered above. Although the common law of master and servant is most often applied when it is necessary to distinguish employees from independent contractors, it is clear that under Connecticut law " 'one is an employee if the employer has the right to direct what work shall be done and when and how it shall be done, or in other words, has the general control over what work shall be done and how.' " *Cumbo v. E.B. McGurk,* 124 Conn. 433, 435, 200 A. 328, 329 (1938) (quoting *Tortorici v. Moosop, Inc.,* 107 Conn. 143, 146, 139 A. 642 (1927)). As Judge T.F. Gilroy Daly has observed, under the common law, "the essential characteristic of the employer-employee relationship is the employer's power or right to control the employee's conduct. The selection or hiring of the employee, power of dismissal, and payment of wages are also relevant factors." *Members of the Bridgeport Housing Authority Police Force v. City of Bridgeport,* 85 F.R.D. 624, 640 (D.Conn.1980) (citations omitted).

In sum, under the common law, as well as under the four-factor test and the instrumentality and identity rules of Connecticut's law of corporations, it is beyond doubt that only Greater Hartford can be considered plaintiff's employer. Accordingly, all claims against Defendant National must be dismissed.

## II.

### *Greater Hartford's Motion for Summary Judgment*

Count One of plaintiff's complaint alleges wrongful discharge in violation of public policy, Count Two alleges breach of an employment contract, and Count Three appears to allege violation of the duty of good faith and/or intentional infliction of emotional distress. Greater Hartford has moved for summary judgment as to all counts in plaintiff's complaint on the grounds that plaintiff fails to state a claim upon which relief may be granted.

**A. *Count One***

Count One of plaintiff's complaint alleges the tort of wrongful discharge in violation of public policy. This tort was first recognized by the Connecticut Supreme Court in *Sheets v. Teddy's Frosted Foods,* 179 Conn. 471, 427 A.2d 385 (1980). In *Sheets,* the Connecticut Supreme Court recognized a cause of action for wrongful discharge when the firing of an at-will employee would violate a clear mandate of public policy embodied in a state statutory scheme. The *Sheets* decision itself left open the question whether the violation of a state statute was invariably a prerequisite for such a tort action, *id.* 179 Conn. at 480, 427 A.2d at 389, but later cases seem to indicate that a specific statutory violation is not a prerequisite. *See Schmidt v. Yardney,* 4 Conn.App. 69, 74, 492 A.2d 512, 515 (1985) (recognizing the "important public policy ... against fraud"); *see also Burns v. Preston Trucking Company, Inc.,* 621 F.Supp. 366, 369 (D.Conn.1985) (discussing *Sheets* and its progeny). Nevertheless, *Sheets* and subsequent Connecticut cases show a clear refusal to expand the availability of the cause of action beyond situations in which the plaintiff can show that defendant's actions contravene a clear mandate of public policy. *See Magnan v. Anaconda Industries,* 193 Conn. 558, 572, 479 A.2d 781, 789 (1984). As Justice Peters noted in *Sheets,* "courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarrant litigation." *Sheets,* 179 Conn. at 477, 427 A.2d at 387–88.

In the present case, plaintiff acknowledges the narrow applicability of the tort of wrongful discharge, but argues that there are genuine questions of material fact as to whether or not Greater Hartford violated the clear public policy in favor of unemployment compensation. Greater Hartford contends that plaintiff was terminated for leaving work without permission and for identifying herself as a representative of her employer without authorization. *See* Greater Hartford Chapter's Memorandum in Support of Summary Judgment

(filed May 27, 1986) ("Greater Hartford's Memorandum") at 17–18. There is some support in the record for this position. *See* Transcript of Deposition of Patricia Owens, *attached* as Exhibit 18 to Greater Hartford's Memorandum at 123, 126. Not surprisingly, plaintiff characterizes her actions, and those of her employer, very differently, arguing in essence that the facts support the inference that the stated reasons for plaintiff's dismissal were pretextual. *See* Plaintiff's Memorandum in Opposition to Greater Hartford at 5–6. There is also some support for this position in the record. *See* Termination Document (dated Dec. 7, 1982) *attached to* Plaintiff's Memorandum; Decision of the Appeals Referee (dated Feb. 10, 1983) *attached to* Plaintiff's Memorandum. While Greater Hartford emphasizes that plaintiff was not told to attend the hearing, *see* The Greater Hartford Chapter's Statement Of Material Facts As To Which There Is No Genuine Issue To Be Tried (filed May 27, 1986) at 6, ¶ 21; Greater Hartford's Memorandum at 6, plaintiff emphasizes that she was *not* told *not* to attend the hearing. *See* Plaintiff's Memorandum in Opposition to Greater Hartford at 3. Plaintiff also claims that she did not misrepresent Greater Hartford at the meeting. *Id.* Furthermore, the circumstances immediately preceding plaintiff's decision to attend the hearing were confused, and taking the facts in the light most favorable to plaintiff, it is arguable that she might reasonably have concluded that there would be no objection to her attendance.

Nevertheless, the question still remains whether these facts reveal too tenuous a connection between the events that took place and a clear mandate of public policy designed to protect the integrity of the unemployment hearing process—that is, too tenuous a connection to support a claim for wrongful discharge. It is undisputed that plaintiff did not request, let alone receive, permission from Greater Hartford to attend the hearing. Greater Hartford's Memorandum at 6. In fact, the claimant herself had not asked plaintiff to attend. *Id.* at 8. Similarly, while the context in which she elected to identify herself as a representative of the employer at the hearing makes such a decision comprehensible, if not necessarily correct, it is clear that her employer's disapproval of such a decision cannot be interpreted as designed to undermine the integrity of the hearing process.

■ In sum, regardless of how one views the allegation that Greater Hartford was unfair in its dealings with plaintiff, Greater Hartford's action in terminating plaintiff falls far short of the line between "claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not." *Sheets,* 179 Conn. at 477, 427 A.2d at 387. To hold otherwise under the facts of this case would be to ignore the narrow confines within which the Connecticut Supreme Court has limited the applicability of the doctrine of wrongful discharge for violation of public policy. *See Banerjee v. Roberts,* 641 F.Supp. 1093, 1108 (D.Conn.1986). Accordingly, Greater Hartford's motion for summary judgment as to Count One of plaintiff's complaint must be granted.

## B. *Count Two*

Count Two of plaintiff's complaint alleges breach of plaintiff's employment contract. Because there was no formal contract between Greater Hartford and plaintiff, plaintiff contends that "the totality of the provisions of the employee handbook, together with the Supervisors manual, constituted a contractual relationship that was breached by her termination." Plaintiff's Memorandum in Opposition to Greater Hartford at 5. Following the Connecticut Supreme Court's decision in *Finley v. Aetna Life & Casualty Co.,* 202 Conn. 190, 520 A.2d 208 (1987) ("*Finley*"), it is now clear that "under appropriate circumstances, [statements in an employer's personnel manual] may give rise to an express or implied contract between employer and employee." *Id.* at 198, 520 A.2d 208 (cited cases omitted). Greater Hartford concedes as much, but argues that the statements upon which plaintiff purports to rely could not reasonably be construed to form a con-

tract, *see, Finley* 202 Conn. at 199 n. 5, 520 A.2d 214 n. 5, and that even if a contract was created by its employee handbook and supervisors' manual, the undisputed facts reveal that any such contract's terms were fully complied with when plaintiff was terminated.

Plaintiff argues that the question of whether the employee handbook and supervisors' manual at issue in this case, when read in the circumstances presented, rises to the level of an enforceable contract is necessarily a question of fact. Plaintiff's Memorandum in Opposition to Greater Hartford at 5. However, even after *Finley,* it is clear that the existence of a personnel manual claimed to create a contractual relationship does not automatically create a question of fact which precludes summary judgment. In this case the threshold question is whether, interpreting all inferences in a light most favorable to plaintiff, the manuals issued by Greater Hartford could be found to give rise to an enforceable contract. On a motion for summary judgment, this is a question of law for the court. *See Finley, supra,* 202 Conn. at 199 n. 5, 520 A.2d 214 n. 5 (language which cannot "reasonably be construed as a basis for a contractual promise" cannot form a contract); *see also Anderson v. Liberty Lobby, supra,* 106 S.Ct. at 2511 (if, on the evidence, only one reasonable conclusion is possible, summary judgment must be granted).

The relevant portions of the employee handbook issued by Greater Hartford, "You and the Red Cross[:] Handbook for Employees" *attached as* Exhibit 2 to Greater Hartford's Memorandum, ("Employee Handbook"), include the following statements:

> Regular employees ... are hired with the expectation that they will remain with the organization as long as their performance is satisfactory and their services are needed.
>
> Release—An employee may be released from employment because of misconduct, unsatisfactory work performance, or reduction in staff. Employees separated

because of acts of misconduct need not be given notice regardless of the length of time they have been on staff....

> [The following are] some of the acts of misconduct which, if committed, will result in appropriate disciplinary action up to and including discharge if necessary.
>
> 1. Absence from Work—Leaving work during working hours without permission, and lack of notification to one's supervisor when unable to report to work.

*Id.* at 1, 9, 11.

The supervisors' manual which plaintiff claims also gives rise to her employment contract, Supervisors' Personnel Manual, Supervisors' Guidelines for Employee Discipline, *attached as* Exhibit 3 to Greater Hartford's Memorandum ("Supervisors' Manual"), provides for progressive discipline procedures to be followed by supervisors in disciplining employees; at the same time, however, the Supervisors' Manual includes the following statement: *"NOTE:* Serious offenses may warrant discharge without prior warnings or progressive discipline."

█ The Supervisors' Manual cannot form the basis for an enforceable contract because it was not generally provided to employees or intended for circulation. Affidavit of Vincent J. Celeste in Support of the Greater Hartford Chapter's Motion for Summary Judgment (filed May 28, 1986) at 3. Inasmuch as the statements in the Supervisors' Manual were never made to the employees, these statements cannot reasonably be construed as a promise to the employees, and therefore cannot give rise to an express or implied contract between Greater Hartford and its workers, supervisory or not. *See Finley, supra,* 202 Conn. at 199 n. 5, 520 A.2d 214 n. 5 (concluding that language which cannot "reasonably be construed as a basis for a contractual promise" cannot form a contract). Plaintiff herself knew of the policies in the Supervisors' Manual only because she herself was a supervisor, not because Greater Hartford could be said to have offered to bind itself to those terms.[2]

**2.** In reaching this conclusion, the court intimates no view as to the admissibility of the

The Employee Handbook, however, was generally distributed to employees. Furthermore, unlike the manual at issue in *Hunt v. IBM America Employees Federal Credit Union*, 384 N.W.2d 853 (Minn.1986), a case relied upon by Greater Hartford, the Employee Handbook does provide examples of some, if not all, of the acts of misconduct which might lead to discipline or dismissal, including the specific act—leaving work without permission—relied upon by Greater Hartford as the reason for plaintiff's termination in this case. Accordingly, under the broad rule of *Finley*, even though "[t]he relevant statements in the defendant's personnel manual certainly could have been interpreted as noncontractual.... In the absence of 'definitive contract language' ... 'the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact'·... properly to be determined by the jury." *Finley, supra*, 202 Conn. at 199, 520 A.2d 214.

■ Assuming that a jury would find that the Employee Handbook could give rise to a contract, there is still the question of whether any rational jury could find that that contract had been breached by Greater Hartford when it dismissed the plaintiff. Plaintiff argues that "defendants have committed to continued employment so long as the job is performed as required, the job exists and policies and practices are not breached." Plaintiff's Supplemental Brief at 5. Defendant argues that a policy was breached, and that plaintiff was terminated for leaving work without permission, one of the specifically defined acts of misconduct in the Employee Handbook. Greater Hartford's Memorandum at 17–18. Greater Hartford emphasizes that in her "own words" plaintiff has acknowledged that she "took a half personal day without [her] supervisor's permission." The Greater Hartford Chapter's Response to Plaintiff's Supplemental Statement of Facts in Dispute (filed May 7, 1987) at 2. However, read in context, plaintiff's statement is arguably her attempt to summarize her su- Supervisors' Manual on the question of Greater

pervisor's position, not a confession of misconduct. Plaintiff has contended all along, and there is evidence in the record that may support the contention, that she was not terminated for leaving work without permission. The memorandum from plaintiff to her supervisor which Greater Hartford has submitted to support its contention that plaintiff was terminated for leaving work without permission also supports the contention that "leaving work without permission" may have been defined in practice not to include plaintiff's actions in this case. Memo to Chip Caton (dated Nov. 26, 1982), *attached as* Exhibit 4 to Greater Hartford's Memorandum at 4; *see also* Deposition Transcript of Patricia Owens (dated Oct. 2, 1985), *attached as* Exhibit 18 to Greater Hartford's Memorandum at 118. Viewed in its entirety, evidence offered by plaintiff—and defendant—arguably supports plaintiff's allegation that she was terminated for reasons other than those permitted under the alleged employment contract between herself and Greater Hartford and would be sufficient to allow a rational trier of fact to find that the alleged employment contract was breached by defendant when she was dismissed. Accordingly, defendant Greater Hartford's motion for summary judgment as to Count Two must be denied.

## C. *Count Three*

Turning to Count Three of plaintiff's complaint, it is sufficient to note that at the hearing held in open court and on the record on July 2, 1986, plaintiff conceded that under Connecticut law there is no separate and distinct cause of action for violation of the duty of good faith. At the hearing, plaintiff's counsel also denied that plaintiff was alleging intentional infliction of emotional distress. Accordingly, Greater Hartford's motion for summary judgment as to Count Three of the complaint is granted.

### *Conclusion*

For the reasons stated above in Part I, defendant American National Red Cross's motion for summary judgment is granted.

Hartford's contractual intent.

For the reasons stated in Parts II(A) and (C), defendant Greater Hartford's motion for summary judgment is granted with respect to Counts One and Three.

For the reasons stated in Part II(B), defendant Greater Hartford's motion for for summary judgment with respect to Count Two is denied.

The claims against defendant American National Red Cross only are dismissed with prejudice. Inasmuch as there is no just reason for delay, the Clerk shall enter judgment only for defendant American National Red Cross. Fed.R.Civ.P. 54(b); Rule 19, Local Rules of Civil Procedure (D.Conn.).

It is so ordered.