George **COWEN**

v.

**FEDERAL EXPRESS CORPORATION.**

No. 3:97CV576 (AHN).

United States District Court,
D. Connecticut.

Sept. 10, 1998.

34

Paul J. Dorsi, Law Offices of Jerome A. Lacobelle, West Haven, CT, for Plaintiff.

Richard D. O'Connor, Dana Shaw Mac-Kinnon, Siegel, O'Connor, Schiff & Zangari, Harford, CT, Colby S. Morgan, Jr., Federal Exp. Corp., Memphis, TN, for Defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

Plaintiff, George Cowen ("Cowen"), brings this action against the defendant, Federal Express Corporation ("Federal Express"), for wrongful termination. Specifically, he alleges claims for breach of contract; breach of the implied covenant of good faith and fair dealing; promissory estoppel; defamation; and negligent infliction of emotional distress. Now pending before the court is Federal Express's Motion for Summary Judgment.

For the following reasons, this motion [doc. # 19] is **GRANTED.**

## STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case identifies those facts that are material on a motion for summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Rule 56(c); *see Miner v. City of Glens Falls,* 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir. 1992) (internal quotation marks and citation omitted). The burden of showing that no genuine dispute about an issue of material fact exists rests on the party seeking·summary judgment. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing the record to determine whether a genuine dispute as to a material fact exists, the court is required to resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) (citation omitted).

## FACTS

The following facts are undisputed.

Cowen was hired by Federal Express on August 7, 1989. (*See* Dep. George Cowen [hereinafter "Cowen Dep."] at 18–20.) He started as manager of station operations for the New Haven, Connecticut station and was promoted to manager of station operations for the Stratford, Connecticut station. (*See id.* at 19–20, 40–42.)

When he began his employment with Federal Express, Cowen received a copy of both the Federal Express Employee Handbook ("the Handbook") and the Federal Express (USA) Personnel Policy and Procedure Manual ("the Manual"). (*See id.* at 27–30.) With respect to the Handbook, Cowen signed a receipt form which stated that the "Handbook should not be considered a contract of employment, nor should [its] provisions be read or implied to provide for one." By signing this form, Cowen acknowledged that the Handbook "contain[ed] guidelines only" and that Federal Express could "modify· [it] by amending or terminating any policy, procedure, or employee benefit program at any time."[1] (*See id.* at 29–30, Ex. 4.) In addition, the Manual specifically disclaimed contractual liability, stating the following:

> This manual is intended solely as a guide for management and employees during employment. It is not a contract of employment, and no such contract may be implied from its provisions. Nothing in this manual shall be construed to abrogate the employment agreement signed upon application for employment preserving the Company's and the employee's right to terminate this relationship at the will of either party. The provisions of this manual may be modified amended or deleted by the Company at any time at its sole discretion without prior notice.

(*Id.* Ex. 6.) It repeatedly described Federal Express's relationship with its employees as "employment at will," specifically providing that

1. Cowen, like all Federal Express employees, received a copy of the Handbook and signed a receipt form every year of his employment with the company. (*See* Cowen Dep. at 28.)

[t]he employment relationship between the Company and any employee may be terminated at the will of either party as stated in the employment agreement signed upon application for employment. As described in that agreement, the policies and procedures set forth in this manual provide guidelines for management and employees during employment, but do not create contractual rights regarding termination or otherwise.

(*Id.* Exs. 7, 8 & 11.)

Pam Ronne ("Ronne"), a senior manager at Federal Express, was Cowen's immediate supervisor for the duration of his employment as manager of station operations in Stratford. As such, she was responsible for issuing written memoranda and performance reminders to Cowen when such action was warranted under the Performance Improvement Policy ("the Policy") set forth in the Manual. (*See id.* at 42–43, Ex. 8.) On approximately ten occasions between January, 1994 and October, 1995, Ronne sent Cowen memoranda regarding specific performance failures, several of which prevented Federal Express from meeting service commitments to customers. (*See* Def.'s Stat. Undisputed Material Facts at 6–10; Cowen Dep. Exs. 14, 16, 17, 20, 21, 24, 25, 34, 35.) Finally, on October 6, 1995, Ronne terminated Cowen in accordance with the Policy because he had received three Performance Reminder Letters within a twelve-month period.[2] (*See* Cowen Dep. Ex. 35.) While he appealed his termination through a three-step process provided for by the Policy, his termination was ultimately upheld. (*See id.* at 167–68, Ex. 43.)

## DISCUSSION

By his complaint, Cowen brings claims against Federal Express for breach of contract; breach of the implied covenant of good faith and fair dealing; promissory estoppel; defamation and negligent infliction of emotional distress. Federal Express now moves for summary judgment as to all of these claims, arguing that no genuine issues of material fact exist and that each claim fails as a matter of law.

### I. *Breach of Contract*

Cowen claims that the Manual and the Handbook constitute an enforceable contract and that his termination violated the written policies contained therein regarding discipline and termination because Federal Express terminated him without "just cause." Federal Express, however, contends that these manuals do not give rise to an enforceable contract.

■ "Under appropriate circumstances, statements in an employer's personnel manual may give rise to an express or implied contract between employer and employee." *Owens v. American Red Cross*, 673 F.Supp. 1156, 1164 (D.Conn.1987) (quoting *Finley v. Aetna Life & Casualty Co.*, 202 Conn. 190, 198, 520 A.2d 208 (1987)). However, language which cannot "reasonably be construed as a basis for a contractual promise" cannot create an enforceable contract. *See Finley*, 202 Conn. at 199, n. 5, 520 A.2d 208. It is appropriate to determine, on a motion for summary judgment, whether employee manuals do give rise to such a contract. *See Owens*, 673 F.Supp. at 1165.

■ Here, both the Manual and the Handbook contain several effective and comprehensive disclaimers stating that their provisions are not contractual. The Manual specifically states that it "is intended solely as a guide for management and employees" and "is not a contract of employment." (*See* Cowen Dep. Ex. 6.) It further states that "no [employment] contract may be implied from

---

**2.** The termination notice that Ronne issued to Cowen read as follows:

> Your employment with [Federal Express] is terminated effective Monday, October 9, 1995. I have conducted an exhaustive investigation and have found that this performance reminder is appropriate as you have failed to take the necessary initiative to improve and make the effort to change in those areas I have documented where you need immediate attention. The fact that you failed as a leader during a checkride with one of your employees made this performance failure particularly regrettable. As this is your third written notification within a 12 month period, your dismissal is in conformance with the Performance Improvement Policy.

(Cowen Dep. Ex. 35.)

its provisions." (*Id.*) In fact, the Manual repeats the following sentence several times: "the policies and procedures set forth in this manual provide guidelines for management and employees during employment, but do not create contractual rights regarding termination or otherwise." (*See id.* Exs. 7, 8 & 11.) Cowen read a similar disclaimer each year when he received a new Handbook. The receipt form that he signed stated that he understood that the Handbook was not to "be considered a contract of employment, nor should [its] provisions be read or implied to provide for one." (*See id.* Ex. 4.)

The court addressed this exact issue in *Cordier v. Federal Express Corp.*, No. 3:95cv438 (AHN) (D.Conn. June 28, 1996). In that case, the plaintiff also brought a breach of contract claim, contending, as Cowen does here, that the Federal Express Manual and Handbook gave rise to an enforceable employment contract. *See id.*, slip op. at 10–11. However, the court was not persuaded by *Cordier's* arguments and instead held that Federal Express "effectively disclaimed any intention to contract" by, *inter alia,* "explicitly stat[ing] that the manual does not create a contract and does not alter the at-will status of [Federal Express] employees." *Id.*, slip op. at 11.

This case is no different from *Cordier,* and Cowen has neither presented additional evidence, nor put forth new arguments which persuade the court to alter its position. Federal Express's employee manuals *do not* give rise to an enforceable contract. Rather, Federal Express repeatedly disclaims any intention to contract, stating throughout the Manual, in no uncertain terms, that its provisions are mere guidelines which do not give rise to an express or implied employment contract. *See Manning v. Cigna Corp.,* 807 F.Supp. 889, 895 (D.Conn.1991) (holding that a handbook which stated that it "was not an employment contract," but rather was "a statement of current policies, practices and procedures," did not give rise to an enforceable contract). As a manager at Federal Express who administered the policies and procedures set forth in the Manual, Cowen should have been exceedingly familiar with these provisions and known that they adequately disclaimed contractual liability. Thus, because he has failed to prove, as he must, "that the alleged employment manual contains mandatory directives enforceable as contractual obligations, and not mere guidelines for employees," *Grich v. Textron Lycoming,* 822 F.Supp. 66, 71 (D.Conn.1993), summary judgment must be granted as to his breach of contract claim.[3]

## II. *Breach of Covenant of Good Faith and Fair Dealing*

Cowen also alleges that Federal Express breached the implied covenant of good faith and fair dealing by (1) terminating his employment without just cause; (2) failing to meet with him to discuss his job performance; and (3) denying his appeal without a complete and adequate investigation. *See* Complaint ¶ 44. Federal Express responds by arguing that this claim fails as a matter of law because Cowen cannot establish either the existence of an enforceable contract, or a violation of established public policy.

■ In order for an employee to establish a claim for breach of the implied covenant of good faith and fair dealing, he must allege either that an enforceable employment contract exists, or that the employer's actions in discharging the employee violated a recognized public policy. *See Cordier,* slip op. at 13; *Carbone v. Atlantic Richfield Co.,* 204 Conn. 460, 467, 528 A.2d 1137 (1987); *Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 572, 479 A.2d 781 (1984). However, the Connecticut Supreme Court has warned that "courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." *Sheets v. Teddy's Frosted Foods,* 179 Conn. 471, 477, 427 A.2d 385 (1980). Therefore, where a plaintiff employee has failed to submit any evidence that an enforceable employment contract existed, or that the termination was

---

**3.** Had the court held that Federal Express's disclaimers were not sufficient and thus it was contractually bound by the Manual's provisions, it still would have granted summary judgment in favor of Federal Express because, according to the undisputed facts, it has abided by these provisions.

for some "demonstrably improper reason ... whose impropriety is derived from some important violation of public policy," the court must grant a defendant employer's motion for summary judgment. *See Manning,* 807 F.Supp. at 897.

The court has already held that the Manual and the Handbook did not give rise to an express or implied employment contract. Thus, to the extent that this claim relies on the existence of such a contract, it must be dismissed.[4]

■ Furthermore, the court cannot discern any violation of recognized public policy. Under the Manual, Federal Express can terminate any employee who receives three or more Performance Reminder Letters in a one year period. From January, 1994 to October, 1995, Cowen received ten separate written warnings regarding his employment performance, the final three of which constituted Performance Reminder Letters. Specifically, on January 9, 1995, Ronne issued him a written Performance Reminder Letter because, during one of his shifts, an entire truckload of freight had been overlooked, resulting in an untimely delivery to a customer. Then, on March 8, 1995, Cowen received another Performance Reminder for overlooking freight. Finally, on October 6, 1995, Cowen received a "Performance Reminder/Termination Notice" because he had (1) failed to pick up a customer's package while supervising a courier during a "check ride"; and (2) failed to improve his documented areas of weaknesses. Each of these Performance Reminders complied with the procedures provided for by the Manual and adequately informed Cowen of his appeal rights. In addition, after his termination, Cowen exhausted the three-step appeals process described in the Manual. Thus, because Federal Express terminated Cowen in accordance with the specific procedures set forth in the Manual and did not violate any recognized public policy, summary judgment must be granted as to this claim.

### III. *Promissory Estoppel*

■ Under the doctrine of promissory estoppel, an implied employment contract may arise "where injustice to a promisee who has acted in reliance can be avoided only by enforcement of a clear and definite promise which a promisor could reasonably have expected to induce reliance." *Manning,* 807 F.Supp. at 895 (quoting *D'Ulisse–Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 216, 520 A.2d 217 (1987)) (internal quotation marks omitted). In the employment context, a plaintiff must show that his employer "agreed either by words or action or conduct to undertake some form of actual contract[ual] commitment to him under which he could not be terminated without just cause." *Id.* (quoting *Coelho v. Posi–Seal Int'l, Inc.,* 208 Conn. 106, 112, 544 A.2d 170 (1988)) (internal quotation marks omitted).

■ Cowen's claim for promissory estoppel alleges that he relied on the policies and procedures set forth in the Manual regarding discipline and termination and that he was terminated in violation of those procedures and without just cause. However, as with his other contract claims, this claim also fails as a matter of law.

First, the Manual, which Cowen stated that he had read more than once, repeated *several* times that he was an employee at will with Federal Express and thus his employment could be terminated "at the will of either party." He had no entitlement to continued employment. To the extent that the Manual and the Handbook set forth procedures for termination and discipline, these provisions *did not* create any express or implied contractual rights enforceable by Cowen. In fact, both of these documents repeatedly disclaimed any intention to create such rights.

Second, accepting as true Cowen's claim that he was told that if he did his job and

---

4. It appears from Cowen's memorandum in opposition to this motion for summary judgment that he does base this claim on the existence of an enforceable contract. Specifically, he states "that once a contractual relationship has been established by virtue of express promises ..., the defendant ha[s] an obligation to construe and interpret the language establishing the process so as to convey some meaningful benefit upon the plaintiff." (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 8.)

followed the rules, he would not be terminated, such oral representations are insufficient to create an implied contract. Unlike the cases cited by Cowen which held that an employer's oral representations could be adequate to create an implied contract, in this case, there is an employee manual which clearly and specifically delineates Cowen's employment at will relationship with Federal Express. As a manager, Cowen was acutely aware of the relevant provisions and should not have reasonably relied on any potentially conflicting oral representations.

Lastly, as the court has already held, Cowen was terminated for just cause and in accordance with the procedures and policies set forth in the Manual. Thus, even if the court held that an implied contract resulted from the alleged oral representations that Cowen would keep his job if he followed the rules, Federal Express did not breach this contract by terminating him. Again, according to the undisputed facts, Cowen did not follow the rules. He received ten written warnings in a two year period and was terminated because he received three Performance Reminder Letters within the same year.

## IV. *Defamation*

Cowen's defamation claim is not based on disclosures made by Federal Express to third parties. Rather, his claim is based on disclosures made by Federal Express to him, which he allegedly will be compelled to make to third party employers. In short, Cowen's defamation claim is based on the possibility that future employers will compel him to communicate the reasons why Federal Express fired him, reasons that Cowen claims are false and defamatory.

■■■■■■ This claim fails for two reasons. First, the Connecticut appellate courts have not yet recognized a cause of action for self-defamation, and this court has specifically held that "there is no publication where the defendant communicates the slanderous statement directly to the plaintiff who then communicates it to a third party." *Alexandru v. Northeast Utilities Serv. Co.*, Civ. No. 3:95cv461 (AHN), 1996 WL 684421, at *6 (D.Conn. Oct. 10, 1996) (citation and internal quotation marks omitted). Thus, because Cowen's defamation claim does not allege that Federal Express published defamatory statements about Cowen to third parties, it fails as a matter of law.

■■■■ However, even assuming *arguendo* that the doctrine of self-publication exists in Connecticut, there are insufficient facts in the record to support a claim for defamation. Following his termination from Federal Express, Cowen was hired by Merchant's Home Delivery ("MHD") despite his disclosure of the reasons for his termination from Federal Express. In fact, Cowen only disclosed the reasons for his termination to one individual at MHD, Hank Marley ("Marley"), who had been his senior manager at Federal Express and, according to Cowen, was the reason that MHD hired him. (*See* Cowen Dep. at 183.) Consequently, no harm resulted from this disclosure. Furthermore, Cowen's claims that he will be compelled to make additional defamatory disclosures to potential future employers are far too speculative. To the extent that Connecticut recognizes defamation claims based on self-publication, such claims must be supported by evidence of *actual* republication, not speculative potential republication. *See Alexandru*, 1996 WL 684421, at *6 (holding that "the doctrine of self-publication ... [is] a narrow exception" under which "the plaintiff must allege ... that she has in fact been compelled to republish the statements to a third party"). As this court has previously held, "[a]llegations that the defendant should have known that the plaintiff would be compelled to republish the defamatory statements are insufficient." *Id.*

## V. *Negligent Infliction of Emotional Distress*

■■■■ The mere termination of employment, even where it is wrongful, is not enough to sustain a claim for negligent infliction of emotional distress. *Malik v. Carrier Corp.*, 986 F.Supp. 86, 92 (D.Conn.1997). Accordingly, such a claim in the employment context "arises only where it is based upon unreasonable conduct of the defendant in the termination process." *Parsons v. United Technologies Corp.*, 243 Conn. 66, 88, 700

A.2d 655 (1997) (citation and internal quotation marks omitted).

Here, Cowen neither makes factual allegations, nor comes forward with evidence, to show that Federal Express engaged in unreasonable conduct in its termination process. Rather, he bases this claim on allegations that Federal Express employees "fabricated a paper trail" in an effort to cause his termination. Contrary to Cowen's argument, in *Parsons*, the Connecticut Supreme Court *did not* recognize a claim for negligent infliction of emotional distress to redress unreasonable conduct in the employment relationship as a whole, but instead held that such a claim must be based on unreasonable conduct in the termination process. Thus, because Cowen has failed to come forward with evidence of such conduct, his negligent infliction of emotional distress claim fails as a matter of law.

### CONCLUSION

For the reasons stated above, Federal Express's Motion for Summary Judgment [doc. # 19] is **GRANTED.** The Clerk of the Court is directed to close this case.