**Rose DAVIS, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

**No. CIV.3:00–CV–2432 (EBB).**

United States District Court, D. Connecticut.

July 24, 2002.

William B. Barnes, Rosenstein & Barnes, Fairfield, CT, for Rose Davis, plaintiff.

James F. Shea, William Joseph Anthony, Jackson Lewis, Hartford, CT, for Liberty Mutual Ins. Co., defendant.

*Ruling on Motion for Summary Judgment*

BURNS, Senior District Judge.

Plaintiff Rose Davis ("Ms. Davis") instituted this action against Defendant Liberty Mutual Insurance Co. ("Liberty Mutual") alleging claims of breach of contract (Count One); breach of implied contract (Count Two); detrimental reliance (Count Three); intentional misrepresentation (Count Four); negligent misrepresentation (Count Five); intentional infliction of emotional distress (Count Six); and negligent infliction of emotional distress (Count Seven). Ms. Davis seeks compensatory and punitive damages.

## I. BACKGROUND

### A. Statement of Facts

Ms. Davis began working for Liberty Mutual as a Loss Prevention Clerk in 1981. In 1985, she became a Claims Representative, where she was responsible for processing claims based on the theft or "total loss" of automobiles. In this position, she talked to claimants and insureds, obtained statements, appraised cars, obtained rental cars, settled claims, and issued settlement checks. Ms. Davis was responsible for completing all computer paperwork associated with processing the claims. Ms. Davis was promoted to a Claims Representative II in 1986 and to Senior Claims Representative in 1988. Senior Claims Representative was Liberty Mutual's highest level of claims representative. Although Ms. Davis' essential job functions did not change, as a Senior Claims Representative, she was expected to be more productive and carry more of a workload.

Liberty Mutual counseled Ms. Davis about her need to keep up with her futurity from 1994–1999. Ms. Davis was unable to keep up with her futurity as stated in her: 1996 Performance Appraisal, 1997 Performance Appraisal; July 1997 Desk Review; August 1998 written evaluation; September 22, 1998 written warning; 1998 Performance Review; and a November 16, 1998 letter placing Ms. Davis on probation. Beginning in 1998, Liberty Mutual allowed Ms. Davis to take "quiet time" during the week so that she could take a break from answering the phone and catch up on her administrative work.

In her 1994 Performance Review, Ms. Davis was counseled that she needed to communicate in a less aggressive manner with claimants and insureds. Ms. Davis was advised in her 1995 Performance Review that she needed to continue developing her negotiating skills, incorporating tact and diplomacy to resolve conflicting situations and avoid arguments. Ms. Davis was advised in her 1996 Performance Review that she displayed a lack of flexibility, was unadaptable to change, and became negative and defensive when her routine was disrupted or altered. In her 1997 Performance Review, Ms. Davis was advised that her attitude and behavior had been an ongoing problem in past years and that she was openly negative and disruptive and did not respect authority figures. Ms. Davis was advised in her 1998 Perfor-

mance Review that her continuing disruptive behavior was unsatisfactory and that she needed to improve her behavior and attitude when addressed by management.

On September 22, 1998, Ms. Davis received a written warning for, inter alios, being deficient in meeting key futurity timeframes. Following this written warning, Ms. Davis met with her supervisors on a weekly basis during which her supervisors made recommendations as to how she could perform her daily duties.

Between September 22, 1998, and November 16, 1998, Ms. Davis failed to complete her futurity on fourteen days and did not complete any futurity on eight days. On or about November 16, 1998, Liberty Mutual placed Ms. Davis on forty-five day probation. The probation document specifically provided, and Ms. Davis understood, that if Ms. Davis' performance did not improve, she could be terminated. On March 30, 1999, Ms. Davis was terminated. Ms. Davis was terminated in a private meeting, only in the presence of her managers and/or supervisors.

During her employment, Ms. Davis received Liberty Mutual's Employee Handbook. The Introduction of the Employee Handbook included the following language:

> This handbook is not and should not be considered an employment contract. It serves as a code of conduct for employees to define general duties and responsibilities; it is not intended to alter the at-will employment relationship between Liberty Mutual and any employee … In order to meet its ever-changing needs, the Company makes no promises about how long or if any policies or procedures will be maintained. Modifications may be made without notice at the Company's discretion.

The termination section of the Employee Handbook included the following language: "As you were informed when you completed your application for employment, Company employees are employed at will. This means that an employee may end employment at any time for any reason, with or without notice, and that the Company similarly may dismiss an employee at any time with or without cause or notice." The employee handbook also contained a policy related to resolution of employee conflicts. This policy provided: "Liberty Mutual is committed to providing a working environment in which employees are treated with respect and dignity. But, as in any organization, there may be differences whenever people work together." Ms. Davis never used any of the employee resolution procedures listed in the policy.

*B. Procedural History*

Ms. Davis filed her complaint against Liberty Mutual on November 18, 2000, in the Superior Court of Connecticut in New Haven. On December 21, 2000, Liberty Mutual filed a petition for removal of the civil action in the United States District Court for the District of Connecticut. Liberty Mutual filed a motion for summary judgment on all counts in Ms. Davis' complaint on December 13, 2001. On January 7, 2002, Ms. Davis filed a memorandum in opposition to Liberty Mutual's motion for summary judgement in which she did not oppose the motion for summary judgment as to Counts Four and Five. Summary judgment is therefore entered on those two counts.

## II. SUMMARY JUDGMENT

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548. *Accord, Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party . . ." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1991). If the nonmoving party submits evidence which is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original).

## III. DISCUSSION

### A. Breach of Contract

 Under Connecticut law, contracts of permanent employment or for an indefinite term of employment are terminable at will by the employer. *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 474, 427 A.2d 385 (1980). However, in some circumstances, statements in an employer's personnel manual may create an express or implied contract between the employee and employer, effectively modifying this presumption of at-will employment. *Finley v. Aetna Life & Casualty Co.*, 202 Conn. 190, 198, 520 A.2d 208 (1987). Generally, in the absence of definitive contract language, the determination of what the parties intended is a question of fact to be decided by the trier. *Id.* at 199, 520 A.2d 208. However, in *Manning v. Cigna Corp.*, 807 F.Supp. 889, 893 (D.Conn.1991), this Court recognized that the mere existence of a personnel manual under which a contractual relationship is claimed does not automatically create a question of fact barring summary judgment. In certain cases, whether employee manuals issued by an employer may be found to give rise to an enforceable contract is a question of law to be decided by the court. *Id.*

There is a substantial body of Connecticut state and federal court decisions granting summary judgment in cases where the personnel manual at issue in a breach of contract claim contains an express disclaimer.[1] For example, in *Cardona Aetna*

---

1. *See Cowen v. Federal Express Corp.*, 25 F.Supp.2d 33, 37 (D.Conn.1998) (granting summary judgment on breach of contract claim and stating, "Federal Express repeatedly disclaims any intention to contract, stating throughout the Manual, in no uncertain terms, that its provisions are mere guidelines which do not give rise to an express or implied employment contract."); *Manning*, 807 F.Supp. at 895 (holding that defendant's disclaimer in its manual stating that the manual

*Life & Casualty,* No. 3:96 CV 1009, 1998 WL 246634 (D.Conn. May 8, 1998), the plaintiff, relying on a company handbook entitled "Working With You," asserted that contractual promises were made by Aetna regarding the way performance appraisals would be performed and the process for termination. The handbook contained an explicit disclaimer stating that it "is not intended to create, nor should you interpret it to be, a contract or agreement of any type between the company and you." *Id.* at *5. In granting summary judgment on the plaintiff's claim, this Court stated:

> Although representations in an Employee Handbook may under certain circumstances give rise to an express or implied contract between an employer and employee, in this case the Employee Handbook contained an explicit disclaimer ... The disclaimer in the Aetna handbook is clear and unequivocal. It was located on the second page of the handbook, and although not labeled a 'disclaimer,' it was sufficiently obvious as to be readily observable to any employee reviewing the manual. *Id.* at *5.

█ In the instant case, Liberty Mutual expressly disclaimed any intent to contract with its employees by stating in clear terms in the Introduction section of the Employee Handbook:

> This handbook is not and should not be considered an employment contract ... it is not intended to alter the at-will employment relationship between Liberty Mutual and any employee.

In *Cardona,* this Court found the disclaimer to be sufficiently conspicuous despite its placement on the second page of the handbook and its lack of a specific label separating it from the surrounding text. *Cardona,* 1998 WL 246634, at *16. Here, the disclaimer also lacks a specific label, but it is located on the first page of Liberty Mutual's handbook. *Id.; see also Markgraf v. Hospitality Equity Investors, Inc.,* 1993 WL 53604, at *3 (Conn. Super. Feb. 18, 1993); *Grieco v. Hartford Courant Company,* 1993 WL 28899, at *2–3 (Conn.Super.1993). Moreover, Liberty Mutual reminded its employees of their at-will employment status in the Termination section of the handbook. According to this section of the handbook, "[A]n employee may end employment at any time for any reason, with or without notice, and ... the Company similarly may dismiss an employee at any time with or without cause or notice." There is no question of fact that Liberty Mutual's disclaimer contained within its employee handbook is clear, express and sufficiently conspicuous. Accordingly, Ms. Davis' breach of contract claim fails as a matter of law.

---

was "not an employment contract" precludes plaintiff's breach of contract claims.); *Wallace v. Gaylord Farm Assoc.,* No. CV 89–0233770S, 1992 WL 201970, at *1 (Conn.Super.Ct. Aug. 10, 1992) ("The Employee Manual does, therefore, contain language stating that it should not be construed as a contract and disclaiming any intent to contract. Under such circumstances, the [defendant's] Employee Manual cannot be construed as a contract."); *Lombardi v. Marketing Corp. of America,* No. CV 91 0293281, 1994 WL 247956, at *3 (Conn.Super.Ct. May 23, 1994) (concluding that "based on the disclaimer, [defendant] protected itself from any claims of

contract based on the Employee Handbook."); *Markgraf v. Hospitality Equity Investors,* 1993 WL 53604, *3 (Conn.Super.1993) (language in employee handbook introduction stating "the contents of the handbook are presented as a matter of information only, and are not meant to be a contract ..." held to be sufficient disclaimer); *Grieco v. Hartford Courant Co.,* 1993 WL 28899, *2–3 (Conn.Super.1993) (language on first page of employee handbook stating "the handbook and any of the statements made herein are not to be construed as nor is it a contract ..." held to be sufficient disclaimer).

## B. Breach of Implied Contract

Ms. Davis alleges that her employment contract is implied from the following provisions in Liberty Mutual's employee handbook:

Our policy is to treat all employee's honestly, equitably and objectively ... Liberty Mutual is committed to providing a working environment in which employees are treated with respect and dignity.

Ms. Davis also refers to the progressive discipline policy enunciated in Liberty Mutual's employee handbook as additional evidence supporting her implied contract claim. These provisions, Ms. Davis avers, are sufficiently definite so as to give rise to contractual liability on the part of Liberty Mutual.

Crucial to Ms. Davis' implied contract claim is the related assertion that the disclaimers contained within Liberty Mutual's employee handbook are not sufficiently explicit and, therefore, ineffective. As discussed in the previous section, this claim is without merit. Liberty Mutual's employee handbook contains clear, enforceable disclaimers. This finding is also fatal to Ms. Davis' implied contract claim.

An implied contract, like an express contract, requires actual agreement. *D'Ulisse–Cupo v. Bd. of Directors of Notre Dame High Sch.*, 202 Conn. 206, 211 n. 2, 520 A.2d 217 (1987). "A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." *Christensen v. Bic Corp.*, 18 Conn.App. 451, 458, 558 A.2d 273 (1989). To be sure, "[t]he mere fact that the plaintiff believed the guidelines to constitute a contract does not bind [the defendant] without some evidence that it intended to be bound to such a contract." *Id.* at 458, 558 A.2d 273.

In support of her claim, Ms. Davis relies upon the following rule of construction, which states that: *"In the absence of 'definitive contract language'* ... 'the deter-mination' of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact ... to be determined by the jury." *Finley*, 202 Conn. at 199, 520 A.2d 208 (emphasis added). This rule is inapposite to the present case. Here, through explicit language, Liberty Mutual unequivocally disclaimed any intent to be bound by the provisions of the employee handbook. Liberty Mutual's handbook contained definitive contract language in the form of clear disclaimers, thereby precluding the application of the rule set out in *Finley*.

Accordingly, there is no evidence that Liberty Mutual intended to be bound by the provisions pertaining to fair and equitable working conditions and progressive discipline contained within its employee handbook. The handbook contained explicit statements disclaiming contractual intent. Moreover, the respect and dignity clause even qualifies itself, stating, "But, as in any organization, there may be differences whenever people work together." Accordingly, Ms. Davis' claim for breach of implied contract also fails.

## C. Promissory Estoppel

A successful promissory estoppel claim must contain three essential elements: (1) a clear and definite promise; (2) a reasonable expectation by the promisor that the promise would induce reliance; and (3) actual and reasonable reliance on that promise by the promisee. *D'Ulisse–Cupo*, 202 Conn. at 213, 520 A.2d 217. Furthermore, to create a valid contractual promise requires a meeting of the minds; phrases evaluated out of context cannot support contractual liability. *Christensen*, 18 Conn.App. at 458, 558 A.2d 273.

Liberty Mutual's alleged promise to provide a working environment where "employees are treated with respect and

dignity," and "to treat all employees honestly, equitably, and objectively," provides the foundation for Ms. Davis' promissory estoppel claim. When considered in conjunction with the other provisions of the employee handbook, Liberty Mutual's promise to treat its employees with respect and dignity clearly fails to satisfy even the first element of a promissory estoppel claim: that the alleged promise be definite and clear.

The *Cowen* decision is particularly instructive in evaluating the first element of Ms. Davis' claim of promissory estoppel. In that case, this Court granted summary judgment in favor of the employer when an employee alleged that he relied on provisions in the employee manual regarding discipline and termination procedures and that he was terminated in violation of those procedures. The fact that the employee manual in *Cowen* repeatedly stated that employment was at-will, coupled with the observation that the manual contained disclaimers regarding contractual intent, ultimately persuaded this Court to find that the plaintiff had no reason to believe that he was entitled to continued employment. *Cowen,* 25 F.Supp.2d at 38–39.[2]

Similarly, in the present case, Liberty Mutual's handbook contained an express disclaimer and advised employees of their at-will employment status in both the Introduction and Termination sections of the handbook. Moreover, Ms. Davis was repeatedly warned about her performance before being terminated. Accordingly, Ms. Davis could not reasonably have expected her employment to continue.

Therefore, Ms. Davis' claim of promissory estoppel fails as a matter of law.

## D. Negligent Infliction of Emotional Distress

To prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have: (1) realized that its conduct involved an unreasonable risk of causing emotional distress to the plaintiff; and (2) realized that the distress, if caused, might result in illness or bodily harm. *See Barrett v. Danbury Hospital,* 232 Conn. 242, 260–61, 654 A.2d 748 (1995). When the alleged infliction occurs in the workplace, Connecticut imposes additional requirements. "[N]egligent infliction of emotional distress in the employment context arises only where it is 'based upon unreasonable conduct of the defendant in the termination process.' The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. 'The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior.'" *Parsons v. United Technologies Corp.,* 243 Conn. 66, 88–99, 700 A.2d 655 (1997), *citing Morris v. Hartford Courant Co.,* 200 Conn. 676, 682, 513 A.2d 66 (1986) *and Madani v. Kendall Ford, Inc.,* 312 Or. 198, 204, 818 P.2d 930 (1991).

Ms. Davis must overcome a high threshold in order to establish unreasonable conduct on the part of Liberty Mutual during the termination process. In *Saloomey v.*

---

**2.** *See also Cardona,* No. 3:96 CV 1009, 1998 WL 246634 (disclaimers in employee handbook persuaded court to grant summary judgment in favor of employer where employee claimed he relied on provisions contained within employee handbook regarding discipline and termination procedures and that he was terminated in violation of those procedures), *Lombardi,* No. CV 91 0293281, 1994 WL 247956 (granting summary judgment on plaintiff's promissory estoppel claim stating "[i]n light of the written, at-will employment agreement and the disclaimer in the Employee Handbook, [the employer's] representations in the handbook are not clear and definite promises that the plaintiff could have reasonably relied on to govern the terms of her employment.")

*A Child's Garden, Inc.*, No. 324092, 1996 WL 278252 (Conn.Super.Ct. Apr. 29, 1996), the court granted the defendant's motion to strike the plaintiff's negligent infliction of emotional distress claim where, without notice, the plaintiff's supervisor called her into a meeting and demanded her resignation without reason and in violation of her contract and staff manual. The court held that such conduct did not involve an unreasonable risk of causing emotional distress. *Id.* at *5.

In *Meola v. Eagle Snacks Corp.*, No. CV 960384760, 2000 WL 1342561, at *5–6 (Conn.Super.Ct. Sept. 6, 2000), the court granted summary judgment on a plaintiff's negligent infliction of emotional distress claim where the plaintiff alleged that he was "given ten minutes to get his things and leave the office; was escorted from the premises by a security guard; when he asked for his check, [his supervisor] wrote him a check and threw it at him; the defendant refused to pay him a bonus or for vacation; and he had to leave behind a number of his personal belongings." *Id.*

▮ In support of her emotional distress claim, Ms. Davis alleges that Liberty Mutual caused her emotional distress by failing to treat her with respect and dignity in accordance with its policies. Specifically, Ms. Davis alleges that when she was terminated, her supervisors misled her as to the reason they needed to meet with her, and, following the termination meeting, escorted her out the back door without allowing her to clean out her desk.

In the present case, Ms. Davis has failed to present any evidence to establish that her termination was carried out in an unreasonable, humiliating, or embarrassing manner. *See Pavliscak v. Bridgeport Hosp.*, 48 Conn.App. 580, 598, 711 A.2d 747 (1998). Ms. Davis was told that she was being terminated in the presence of her supervisors, advised of her rights related to insurance, and was escorted out of the building through the back door.[3] Ms. Davis was not terminated in front of her co-workers, she was not yelled at or denigrated during the termination process, she was not forced to clean out her work area in front of co-workers, she was not paraded to the building's main entrance in front of others and she was not subjected to otherwise humiliating behavior. Liberty Mutual had no reason to believe its conduct involved an unreasonable risk of causing emotional distress. Accordingly, plaintiff's claim of negligent infliction of emotional distress must fail.

### E. Intentional Infliction of Emotional Distress

▮ In order to succeed on a claim for intentional infliction of emotional distress, Ms. Davis must establish the following: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress sustained by plaintiff was severe." *Appleton v. Stonington Bd. of Ed.*, 254 Conn. 205, 210, 757 A.2d 1059 (2000), *citing Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). In order to state a cognizable cause of action, Ms. Davis must not only allege each of the four elements, but also must allege facts sufficient to support them. *See Meyers v. Bunker Ramo Corp.*, No. B–90–506 (JAC), 1992 U.S.Dist. LEXIS 5336, at *26

---

**3.** In *Parsons*, 243 Conn. at 89, 700 A.2d 655, the Connecticut Supreme Court stated, "it is not patently unreasonable for an employer to remove a discharged employee from his premises under a security escort."

(D.Conn.1992). Because this Court finds that Defendant's alleged conduct was not "extreme and outrageous," the other three elements will not be addressed.

 Whether conduct may be regarded as extreme or outrageous is a question, in the first instance, for the court. *See Johnson v. Chesebrough–Pond's USA Co.,* 918 F.Supp. 543, 552 (D.Conn.), *aff'd,* 104 F.3d 355 (2d Cir. 1996), *citing Mellaly v. Eastman Kodak Co.,* 42 Conn.Supp. 17, 18, 597 A.2d 846 (Conn.Super.Ct.1991). Only where "reasonable minds differ," does it become a question for the jury. *Reed v. Signode Corp.,* 652 F.Supp. 129, 137 (D.Conn.1986); *see also Restatement (Second) of Torts* § 46, cmt. (h) (1965). The general rule "is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Mellaly,* 42 Conn.Supp. at 19–20, 597 A.2d 846, *quoting* W. Prosser & W. Keeton, *Torts* § 12, at 60 (5th ed.1984); *see also Restatement (Second) of Torts* § 46, cmt. (d) (1965) ("Liability has been found only where the conduct had been so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society.")[4] "Mere insults, indignities, or annoyances that are not extreme or outrageous will not suffice." *Brown v. Ellis,* 40 Conn.Supp. 165, 484 A.2d 944 (Conn.Super.Ct.1984).

Given the finding that Liberty Mutual's conduct was not unreasonable under the circumstances, it necessarily follows that Liberty Mutual's conduct does not meet the definition of extreme or outrageous. Accordingly, Ms. Davis' claim of intentional infliction of emotional distress must fail.

## IV. CONCLUSION

In summary, and for the reasons set forth above, Liberty Mutual's Motion for Summary Judgement (Doc. No. 18) is GRANTED. The Clerk is ordered to close this case.

SO ORDERED.

### *JUDGMENT*

This matter came on for consideration on defendant's motion for summary before the Honorable Ellen Bree Burns, Senior United States District Judge.

The Court has reviewed all of the papers filed in conjunction with the motion and on July 24, 2002, entered a Ruling on Motion for Summary Judgment granting the relief.

It is therefore ORDERED and ADJUDGED that judgment is entered for the defendant and the case is closed.

---

4. "In interpreting what constitutes 'extreme and outrageous' conduct, Connecticut courts have relied on the Restatement (Second) of Torts § 46, comment (d) (1965) ..." *Thompson v. Service Merchandise, Inc.,* No. 3:96CV1602 (GLG), 1998 WL 559735, *4 (D.Conn. Aug. 11, 1998); *Petyan,* 200 Conn. at 254, 510 A.2d 1337.